**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kevin Joseph PLUTA, Defendant–Appellant.**

No. 97–5026.

United States Court of Appeals, Sixth Circuit.

Submitted March 11, 1998.

Decided May 22, 1998.

Sunny A. Koshy (briefed), Office of the U.S. Attorney, Nashville, TN, for Plaintiff-Appellee.

Thomas J. Drake, Jr. (briefed), Nashville, TN, for Defendant-Appellant.

Before: RYAN, COLE, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Defendant Kevin Joseph Pluta ("Pluta") seeks to have us set aside his guilty plea or, in the alternative, to reduce the sentence he received for being a convicted felon in possession of a firearm. Specifically, Pluta finds fault with the district court for: (1) refusing to grant his motion to withdraw his guilty plea; (2) sentencing him as an armed career criminal; (3) enhancing his sentence to offense level 34 pursuant to U.S.S.G. § 4B1.4(b)(3)(A); and (4) departing upward from the sentencing ranges provided in the guidelines by two offense levels. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On the evening of February 1, 1995, Pluta and his friend Danny Jones were spotted in a pickup truck on Interstate 40 driving at speeds of between 70 and 85 miles per hour. Because this stretch of Interstate 40 lies near downtown Nashville and is particularly congested with traffic, the posted speed limit is 55 miles per hour. In addition to driving at excessive speeds and tailgating other vehicles, the pair engaged in more dangerous behavior. While Jones drove the truck, Pluta would point a loaded handgun at motorists, track the movement of their cars, and then quickly jerk his arm upward as if he had just fired the gun at them. In response, a number of motorists swerved, quickly changed lanes, or broke to a dead stop on the interstate.

A Metropolitan Nashville police officer named Joseph Ladnier happened to be driving on the same stretch of Interstate 40 in an unmarked vehicle. Ladnier observed Pluta's actions and the reactions of the "targeted" motorists. Ladnier pulled alongside the truck in order to visually identify the occupants and then proceeded to pull behind the truck in order to relay to a police dispatcher the truck's license plate number.

After Ladnier had called in the license plate number, Pluta leaned half of his body out the open passenger window of the truck, aimed his gun, and fired directly at Ladnier. Fortunately the gunshot did not strike Ladnier, his vehicle, or any of the other nearby motorists. Pluta then placed himself back inside the cabin of the truck. A short time later, Pluta resumed "dry-firing" the loaded handgun at motorists. It was later estimated that Pluta dry-fired the gun at 30 to 40 motorists.

Police officers were eventually able to pull the truck over to the side of the road and arrest Pluta and Jones. Upon their arrest, the police searched Pluta and the contents of the truck. Officers found a .38 caliber bullet in Pluta's right front pants pocket. Inside the cabin of the truck, officers discovered drug paraphernalia, marijuana, and a .38 caliber revolver. The revolver was located under a towel beneath the driver's seat. The gun was loaded with four live bullets, one spent round, and one empty chamber.

At the time of his arrest, Pluta was out on bond pending trial in a Tennessee state court on charges of driving while intoxicated and being in possession of a loaded rifle. On February 21, 1995, Pluta pled guilty to the D.U.I. charge and forfeited his rifle. Pluta was also out on parole at the time of his arrest for a number of state felony convictions in Florida. Among them was a 1990 conviction for being a convicted felon in possession of a firearm.

Pluta's pre-sentence investigation report narrates a now all-too-familiar tale of an individual who began his adolescence com-

mitting relatively minor criminal offenses, but who later graduated to more serious charges upon becoming an adult. Six of Pluta's convictions involved either the use or possession of a dangerous weapon or some form of physical assault. Significant for purposes of this appeal are Pluta's convictions for armed robbery, aggravated assault, commission of a burglary in February of 1984, and commission of a burglary in November of 1990. Pluta pled guilty to all four of the listed convictions. Essentially, Pluta spent the better part of the 1980s and the early 1990s in state prison.

Pluta's periods of probation and parole were also revoked on numerous occasions because of criminal offenses he committed while out of prison. Moreover, while in prison, Pluta continued to engage in criminal activity ranging from loan sharking and assault to the use and distribution of narcotics.

After his arrest on February 1, 1995, criminal charges were filed against Pluta in a Tennessee state court for aggravated assault. The state criminal charges were later dismissed with prejudice in October of 1995. Not long thereafter, a federal grand jury returned a one count indictment charging Pluta with being a convicted felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). The very next day the government filed a notice alleging that Pluta was subject to a sentencing enhancement for being an armed career criminal.

At different points during the course of the criminal proceedings, Pluta was represented by three different attorneys. After Pluta was indicted, his attorneys entered into discussions with the government concerning a possible plea agreement. The intense negotiations between the two sides are evidenced by extensive written correspondence. Among the correspondence is a letter dated November 27, 1995, in which the government noted its intent to seek both a sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and a four-level upward departure. Pluta specifically testified that he discussed the contents of this letter with his then attorney Michael Flanagan.

Pluta pled guilty to the one count indictment on May 20, 1996. During the Rule 11 hearing that ensued, Pluta admitted that he dry-fired a gun at motorists and that he actually fired the gun at Officer Ladnier. Despite some personal reservations with its contents, Pluta also told the district court that the statement of facts contained in the plea agreement was a true and accurate description of the events on the night of February 1, 1995. To corroborate the veracity of the agreed-upon statement of facts, the government introduced the testimony of Officer Ladnier. At the conclusion of the Rule 11 hearing, the district court found that Pluta had competently, knowingly, and voluntarily entered into the plea agreement. The district court, as required by U.S.S.G. § 6B1.1(c), reserved acceptance of the plea agreement until it had an opportunity to consider the pre-sentence report.

On May 22, 1996, the government filed a motion for a four-level upward departure as allowed by the plea agreement. The United States Probation Office then issued its presentence investigation report a month later. As a result of Pluta's substantial assistance to authorities, the government later filed a motion for a two-level downward departure.

On September 23, 1996, seven days before he was to be sentenced, Pluta filed a motion to withdraw his guilty plea. When questioned by the district court as to why he wished to withdraw his plea, Pluta responded, "I wanted to withdraw my plea, therefore, to renegotiate because I wanted to strike the statement of facts." After engaging in a detailed and thorough analysis of the issues raised, the district court denied Pluta's motion to withdraw his guilty plea.

The district court held a sentencing hearing on December 13, 1996. During this hearing, the district court found that four of Pluta's prior convictions in the state of Florida—for armed robbery, aggravated assault, and two burglaries—triggered application of the armed career criminal sentencing enhancement located at 18 U.S.C. § 924(e). In addition to the armed career criminal enhancement, the district court further increased Pluta's offense level to 34 because of the egregious nature of his conduct on the night of February 1, 1995. This additional offense level enhancement was based on

U.S.S.G. § 4B1.4(b)(3)(A), which applies whenever the defendant's conduct involves the use or possession of a firearm in connection with a crime of violence. As a result, Pluta was automatically placed in Criminal History Category VI pursuant to U.S.S.G. § 4B1.4(c)(2). Since Category VI is the highest possible category under the guidelines, Pluta's twenty-five criminal history points based on his prior offenses were never factored into the determination of where Pluta fell along the sentencing guidelines criminal history column.

The district court also granted the government's motion for both a two-level downward departure for acceptance of responsibility and another two-level downward departure for providing substantial assistance. Pluta was thus placed at offense level 30. The district court then entertained the government's motion for a four-level upward departure based on the blatant nature of Pluta's conduct on the night in question and Pluta's extensive and violent criminal past. After hearing arguments from both sides, the district court granted a two-level upward departure. As a result, Pluta had a final offense level of 32 and a criminal history category of VI. The resulting sentencing guideline range provided for a prison sentence between 210 and 262 months. The district court sentenced Pluta to 240 months in prison and five years of supervised release. This appeal followed.

## II. ANALYSIS

### A. *Motion to Withdraw Guilty Plea*

Pluta claims that the district court erred in denying his motion to withdraw his guilty plea. He argues that he only spent an hour and a half with his attorney discussing the particulars of the agreement before he pled guilty. Pluta further intimates that he would not have entered the plea agreement in question if he had known that a detailed statement of facts was not required.

■■■ We review a district court's decision denying a motion to withdraw a guilty plea for abuse of discretion. *United States v. Riascos–Suarez*, 73 F.3d 616, 621 (6th Cir. 1996). Federal Rule of Criminal Procedure 32(e) provides in part: "[i]f a motion to withdraw a plea of guilty or *nolo contendre* is

made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." FED. R.CRIM. P. 32(e). The purpose of the rule "is to allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir.1991). The rule, however, was not designed as a tactical tool allowing a defendant "to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *Id.* (quoting *United States v. Carr,* 740 F.2d 339, 345 (5th Cir.1984)). To that end, the defendant has the burden of proving the existence of a "fair and just reason" supporting the withdrawal of his or her guilty plea. *United States v. Bazzi,* 94 F.3d 1025, 1027 (6th Cir.1996).

■■■ In deciding whether a defendant has demonstrated the existence of a "fair and just reason," the district court should consider:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara,* 27 F.3d 1174, 1181 (6th Cir.1994). In this case, none of the above-mentioned factors support Pluta's motion to withdraw his guilty plea.

Pluta waited more than four months before filing a motion to withdraw his plea. In the past, this court has sustained denials of motions to withdraw guilty pleas on the basis of delays far shorter than the four-month delay in this case. *See United States v. Baez,* 87 F.3d 805, 808 (6th Cir.1996) (sixty-seven day delay); *United States v. Goldberg,* 862 F.2d 101, 104 (6th Cir.1988) (fifty-five day delay); *United States v. Spencer,* 836 F.2d 236, 239 (6th Cir.1987) (thirty-five day delay).

Furthermore, Pluta has offered no legitimate reason why he could not have filed his motion at an earlier date. Pluta by his own admission was concerned about the agreed-upon statement of facts the very day he pled guilty. Rather than expressing these concerns to the district court during the Rule 11 hearing, Pluta instead informed the court that the agreed-upon statement of facts was an accurate description of what occurred on the night of February 1, 1995. Pluta now claims that his failure to seek a withdrawal of his plea at an earlier time was due to his ignorance of the Sentencing Guidelines. According to Pluta, he did not know that he could have waited to admit to relevant conduct until after he received a copy of the Sentencing Guidelines. Even with this refinement in the time line, Pluta still waited approximately three months before moving to withdraw his guilty plea.

Pluta's excuse of not having enough time to go over the plea agreement with his attorney is equally unavailing. As demonstrated by the evidence in the record, Pluta, his attorney, and the government engaged in substantial discussions concerning the structure of a possible plea agreement as early as the Fall of 1995. Pluta admitted to the district court that his attorney not only kept him apprised of the state of the plea bargaining negotiations, but also reviewed in detail the substance of the correspondence between the attorney and the government. These negotiations in fact continued over a period of nearly a year and a half. To say that Pluta did not comprehend the substance of the agreement he entered into is simply inconsistent with the facts in the record.

Other factors also weigh against Pluta. Throughout the criminal proceedings he admitted his guilt to the offense for which he was charged—namely, possession of a firearm as a convicted felon. Although Pluta at different points during the process denied "dry-firing" a gun at motorists and firing a gun at Officer Ladnier, these denials do not relate to any of the elements necessary to establish Pluta's guilt for being a convicted felon in possession of a firearm. Instead, such denials only affect the presence of aggravating circumstances relevant to *sentencing*, not *guilt*. Further, Pluta's extensive experience with the criminal justice system,

as evidenced by his twenty-five criminal history points, clearly indicates that Pluta was not a naive stranger to the criminal proceedings in which he was involved.

In the end, Pluta's real reason for filing the motion to withdraw his guilty plea was best captured by his own words: "I wanted to withdraw my plea, therefore, to renegotiate because I wanted to strike the statement of facts." As noted earlier, a motion to withdraw a guilty plea cannot be used as a means to achieve a better bargaining position for later plea negotiations. *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991). Because that is what Pluta actually sought to achieve through his motion to withdraw his guilty plea, the district court did not abuse its discretion in denying the motion.

**B. *Sentencing Enhancement as an Armed Career Criminal***

Pluta assigns two errors to the manner in which the district court applied the "armed career criminal" enhancement to his sentence. *See* 18 U.S.C. § 924(e). First, Pluta argues that the district court should not have counted his two burglary convictions in Florida toward the three "violent felony" convictions needed to trigger the "armed career criminal" enhancement. According to Pluta, his burglary convictions in Florida, while "styled burglaries[,] were in actuality larcenies." Without at least one of the two burglary convictions meeting the definition of "burglary" under § 924(e), the "armed career criminal" sentencing enhancement would be improper. Second, Pluta argues that the district court erred in using his state court convictions without first determining that the guilty pleas, which formed the basis of those convictions, were entered into voluntarily.

▮ We review a district court's application of the sentencing guidelines *de novo*. *United States v. Maness*, 23 F.3d 1006, 1008 (6th Cir.1994). The Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e), provides a sentence of not less than fifteen years for a defendant who is convicted under 18 U.S.C. § 922(g) (possession of a firearm by a convicted felon) and who has three prior convictions for "a violent felony." "Violent felony"

is defined by the statute to include "burglary." 18 U.S.C. § 924(e)(2)(B)(ii).

In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court held that the term "burglary," as used in § 924(e), refers to burglary in the "generic" sense. Specifically, "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor,* 495 U.S. at 599, 110 S.Ct. 2143.

█ Even with this understanding, there still remains the question of how to apply § 924(e) to a defendant who has been convicted under a non-generic burglary statute. As the Supreme Court recognized, "[a] few States' burglary statutes ... define burglary more broadly, *e.g.,* by eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." *Taylor,* 495 U.S. at 599, 110 S.Ct. 2143. Normally, convictions under a non-generic burglary statute do not count as burglaries for purposes of § 924(e). *Id.* at 602, 110 S.Ct. 2143. This result flows from the fact that Congress intended that sentencing courts should look only to the statutory definition of the crime charged, rather than the actual facts underlying the defendant's prior conviction, to determine whether the burglary conviction falls within the meaning of generic burglary. *Taylor,* 495 U.S. at 600, 110 S.Ct. 2143. The Supreme Court also adopted this "categorical approach" in order to avoid the practical difficulties occasioned when a sentencing hearing becomes a mini-trial concerned with determining the particular facts underlying a defendant's past convictions. *Id.* at 601–02, 110 S.Ct. 2143.

The Court did, however, recognize an exception to this categorical approach for a narrow range of cases. *Id.* at 602, 110 S.Ct. 2143. A defendant's past convictions under a non-generic burglary statute may be counted for purposes of § 924(e) if the conviction was, in essence, for generic burglary. *Id.* As the Supreme Court explained:

[I]n a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.

*Id.* Any "look beyond the judgment of conviction" in this context, however, must be "limited to examining easily produced and evaluated court documents, including the judgment of conviction, charging papers, plea agreement, pre-sentence report adopted by the court, and the findings of a sentencing judge." *United States v. Adams,* 91 F.3d 114, 115 (11th Cir.1996) (citing *United States v. Spell,* 44 F.3d 936, 939 (11th Cir.1995)). Application of this exception to the categorical approach is not limited to convictions produced as a result of jury trials. "When the defendant's conviction is by way of [a] guilty plea, it is appropriate under *Taylor* to look to the indictment and guilty plea." *United States v. Kaplansky,* 42 F.3d 320, 322 (6th Cir.1994) (en banc).

█ At the time Pluta was convicted of burglary in Florida, the state statute defined the offense as one of "entering or remaining in a structure or a conveyance with the intent to commit an offense therein." FLA. STAT. ANN. § 810.02 (West 1997). The statute further defined the term "conveyance" as "any motor vehicle, ship, vessel, railroad car, trailer, aircraft, or sleeping car." FLA. STAT. ANN. § 810.011(3) (West 1997). Furthermore, the term "structure" is defined as "a building of any kind, either temporary or permanent, which has a roof over it, *together with the curtilage thereof.*" FLA. STAT. ANN. § 810.011(1) (West 1997) (emphasis added).

As can be discerned from a reading of the statutory definitions, a burglary conviction in Florida has a far broader reach than that captured by *Taylor*'s generic definition of burglary. Indeed, stealing a car or stealing apples from a neighbor's backyard would be counted as a burglary under Florida's statute. Consequently, Florida's burglary statute is of the non-generic variety. *See United States v. Adams,* 91 F.3d 114, 115 (11th

Cir.1996) (describing Florida's burglary statute as "non-generic" for purposes of the armed career criminal enhancement). Because Pluta was convicted under Florida's burglary statute, the district court was permitted to look beyond the mere fact of conviction and consider the charging documents to determine whether Pluta's convictions were, in essence, for generic burglary.

Pluta insists that his February 1984 and November 1990 burglary convictions do not fall within the ambit of § 924(e) because, as allegedly demonstrated by the indictment and plea forms accompanying the sentencing reports, his convictions were not for the burglary of a building or structure. In particular, Pluta directs our attention to the presentence investigation report accompanying his February 1984 burglary conviction, where it notes that the factual basis for his conviction was that he "entered [the victim's] yard and stole items from the rear porch."

If Pluta's status as an "armed career criminal" hinged on his February 1984 conviction qualifying as a "burglary" under § 924(e), we would indeed have serious doubts about the matter. But we need not explore this issue further, since we find that Pluta's November 1990 conviction clearly does qualify as a "burglary" for purposes of § 924(e). In the information charging Pluta with committing a burglary in November of 1990, the nature of the offense was described as Pluta entering a person's home and stealing a VCR, jewelry, and a number of television sets. Whatever meaning one may ascribe to *Taylor*'s generic definition of burglary, it must surely include the actual breaking and entering of a person's home.

Pluta has conceded that his previous convictions for robbery and aggravated assault count as "violent felonies" under § 924(e), so only one additional violent felony is needed to trigger an enhancement for being an armed career criminal. Having concluded that Pluta's November 1990 burglary conviction falls within the generic meaning of burglary, we find that the district court did not err in applying the armed career criminal enhancement to Pluta's sentence.

Pluta nevertheless argues that the district court should not have used any of his prior convictions for purposes of § 924(e)

because the court did not make any determination that he voluntarily entered into the guilty pleas forming the basis for these convictions. For support, Pluta cites to our decision in *United States v. McGlocklin*, 8 F.3d 1037 (6th Cir.1993). In *McGlocklin*, we held that district courts have the power to entertain collateral attacks on state criminal convictions at sentencing hearings. *Id.* at 1040–43. The basis for our decision in *McGlocklin*, however, was subsequently abrogated by the Supreme Court's ruling in *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). In *Custis*, the Supreme Court held that defendants have no right to collaterally attack a previous state criminal conviction "with the sole exception of convictions obtained in violation of the right to counsel...." 511 U.S. at 487, 114 S.Ct. 1732. Because Pluta has not even insinuated that his earlier guilty pleas were elicited in violation of his Sixth Amendment right to counsel, his argument is without merit.

## C. *One Level Enhancement under U.S.S.G. § 4B1.4(b)(3)(A)*

Pluta next takes issue with the district court's consideration of his repeated dry-firing of a handgun at motorists and shooting a handgun at a police officer in setting his offense level at 34. In particular, Pluta argues that because he was never charged with or convicted of any violent offense related to this conduct, the district court could not use such conduct to enhance his offense level.

The sentencing guidelines require that a defendant subject to the armed career criminal sentencing enhancement be initially placed at offense level 33. U.S.S.G. § 4B1.4(b)(3)(B). If, however, the defendant also "used or possessed [a] firearm or ammunition in connection with a crime of violence ... as defined in § 4B1.2(1)," the sentencing guidelines mandate enhancing the defendant's offense level to 34. U.S.S.G. § 4B1.4(b)(3)(A). Section 4B1.2(1), in turn, defines a "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that has as an element the use, or threatened

use of physical force against the person of another, or ... conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(1).

In this case, the district court found that Pluta's conduct in shooting at the police officer and in repeatedly dry-firing a handgun at motorists fits within § 4B1.2(1)'s definition of a crime of violence. Such conduct was punishable by more than one year of imprisonment and necessarily involved a serious potential risk of physical injury to the police officer and other motorists. Consequently, Pluta's offense level was increased to 34.

 Pluta contends that the district court should not have used his conduct on Interstate 40 for purposes of § 4B1.4(b)(3)(A) because he was never actually charged with or convicted of an offense related to that conduct. We disagree. He was charged in a Tennessee state court with aggravated assault for his conduct on Interstate 40. These charges were later dismissed so that the United States Attorney's Office could file criminal charges against Pluta in federal court. Moreover, Pluta misapprehends the prerequisites for applying § 4B1.4(b)(3)(A). This court has previously held that a defendant need not be charged with or convicted of an offense for § 4B1.4(b)(3)(A) to apply, so long as the defendant in fact committed the offense. "The definition [of 'crime of violence' in § 4B1.4] is analogous in this respect to other sections of the guidelines that permit enhancement for *uncharged* relevant conduct, as long as the government proves by a preponderance of the evidence that the conduct occurred." *United States v. Rutledge*, 33 F.3d 671, 674 (6th Cir.1994) (emphasis added).

The government met its burden of proof by introducing the statement of facts in the plea agreement and the testimony of Officer Ladnier, who stated that Pluta had dry-fired a handgun at motorists and fired a handgun at Ladnier. Because such evidence is more than adequate for the government to meet its burden of proof, we hold that the district court did not err in setting Pluta's offense level at 34 pursuant to U.S.S.G. § 4B1.4(b)(3)(A).

## D. *Upward Departure*

 Finally, Pluta contends that the district court erred in granting a two-level upward departure. As is typical of the issues raised in sentencing departure appeals, Pluta challenges the district court's grounds for departure as not being of the kind upon which a sentencing court could rely to justify a departure. We review a district court's decision to depart from the sentencing ranges provided in the guidelines for abuse of discretion. *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 2043, 135 L.Ed.2d 392 (1996). Because questions concerning sentencing departures necessarily address the district court's "refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing," *id.*, 116 S.Ct. at 2046–47, we normally accord substantial deference to the district court's judgment on the matter. *Id.* Nevertheless, "the deference that is due depends on the nature of the question presented." *Id.*, 116 S.Ct. at 2046. When the question is "whether a factor is a permissible basis for departure[,] ... the courts of appeals need not defer to the district court's resolution of the point." *Id.* at 2047.

In granting a two-level upward departure, the district court noted that four features of this case set it apart from the guidelines' "heartland." These features were the following: (1) "dry-firing" a handgun at motorists on a busy interstate, warranting an upward departure pursuant to U.S.S.G. § 5K2.14; (2) firing a handgun at a police officer, warranting an upward departure pursuant to U.S.S.G. § 5K2.6; (3) Pluta's lengthy and violent criminal history, demonstrated by his twenty-five criminal history points, warranting an upward departure pursuant to U.S.S.G. § 4A1.3; and (4) Pluta's repeated violations of bond, probation, and parole provisions, warranting an upward departure pursuant to U.S.S.G. § 4A1.3.

The Sentencing Reform Act of 1984, 18 U.S.C. § 3551, *et seq.*, effected "far-reaching changes in federal sentencing." *Koon*, 116 S.Ct. at 2043. Most notably, the Act curtailed the amount of discretion district courts once enjoyed in meting out the length of sentences imposed on an offender. "The Act

did not eliminate all of the district court's discretion, however." *Id.* at 2044. As the Introduction to the Sentencing Guidelines acknowledges:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

1995 U.S.S.G. ch. 1, pt. A, intro. comment 4(b). Before considering whether the district court's stated grounds support an upward departure, we first note that the Supreme Court's recent decision in *Koon v. United States* has changed the analytical framework in which such inquires are made.

■ According to *Koon*, a sentencing court should ask itself a series of related questions when deciding if a valid ground for departure exists. First, the court must ask: "[w]hat features of [the] case, potentially, take it outside the Guidelines' 'heartland,' and make ... it ... special or unusual?" 116 S.Ct. at 2045 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)). Once a sentencing court has pinpointed the distinguishing feature of the case, the court must then decide whether the Sentencing Commission has forbidden departures based on that feature. *Id.* If it has, then the court's task is at an end. *Id.* If, however, the Sentencing Commission has not prohibited departures based on that feature, then "the court must ascertain whether the Commission has considered the identified feature at all, and if so, whether it has either encouraged or discouraged departures premised thereon." *United States v. Dethlefs*, 123 F.3d 39, 44 (1st Cir.1997).

■ "Once this segment of the analysis is complete, the contours of the sentencing court's authority to depart begin to take shape." *Dethlefs*, 123 F.3d at 44. If the distinguishing feature of the case is one which is encouraged by the sentencing guidelines, then it may be used as a basis for departure so long as the applicable guideline does not already take it into account. *Koon*, 116 S.Ct. at 2045. If the feature is a discour-

aged factor, or an encouraged factor that has already been taken into account by the applicable guideline, the court may only depart if the distinguishing feature is present to an exceptional degree or in some other way makes the case atypical. *Id.* When the distinguishing feature is not mentioned in the sentencing guidelines, the sentencing court must, after looking to the "structure and theory" of the guidelines, decide whether that feature is sufficient to remove the case from the guidelines' heartland. *Id.* It bears repeating, however, that "departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' " *Id.*

Completing this detour through the sentencing guidelines, we now return to the merits of this case. Pluta's argument that the district court's asserted grounds for departure are unjustified finds little support in the guidelines for the armed career criminal sentencing enhancement.

■ The district court's first two reasons for departing from the guidelines stem from the nature of Pluta's conduct on Interstate 40, *i.e.*, that he dry-fired a handgun at a number of motorists and that he shot a gun at a police officer. The district court had previously enhanced Pluta's offense level from 33 to 34 for this same conduct pursuant to U.S.S.G. § 4B1.4(b)(3)(A). The district court, however, noting the egregious and dangerous nature of these acts, held that the conduct warranted more than a simple single level enhancement.

Pluta argues that the sentencing guidelines prevented the district court from departing upwards on the basis of his conduct on Interstate 40. Because the district court had taken this conduct into consideration when enhancing his offense level to 34, it could not, according to Pluta, use the same conduct as grounds for a further upward departure. In other words, this factor, *i.e.*, dry-firing and shooting a gun on a crowded interstate, had already been taken into account by the applicable guideline—namely, U.S.S.G. § 4B1.4(b)(3)(A). This observation, however, is only partially correct. While some of Pluta's conduct on Interstate 40 was considered in enhancing his offense level under § 4B1.4(b)(3)(A), a significant portion was not factored into the court's consideration of the issue.

The grounds relied upon by the district court are specifically encouraged by the guidelines as a basis to depart upward. Section 5K2.6 encourages an upward departure where a weapon was used during the commission of the underlying offense. "The extent of the increase ordinarily should depend on the dangerousness of the weapon, the manner in which it was used, and the extent to which its use endangered others." U.S.S.G. § 5K2.6. By the same token, section 5K2.14 encourages an upward departure where the conduct of the defendant significantly endangered public safety. Absent the one level enhancement already provided by § 4B1.4(b)(3)(A) (dealing with the commission of a crime of violence by an armed career criminal), there is little question that Pluta's conduct on Interstate 40 would merit an upward departure based upon § 5K2.6 or § 5K2.14. *See United States v. Doe,* 18 F.3d 41, 48 (1st Cir.1994) (approving a two-level upward departure under § 5K2.14 where the defendant led police on a high speed car chase through busy city streets); *United States v. Lee,* 989 F.2d 180, 183 (5th Cir.1993) (shooting at vehicles during a high-speed chase on the expressway warranted a two-level upward departure under § 5K2.6); *United States v. Rodriguez–Castro,* 908 F.2d 438, 440–41 (9th Cir.1990) (noting that a three mile car chase at speeds in excess of 75 miles per hour would warrant an upward departure under § 5K2.14).

In this case, however, the district court had already employed § 4B1.4(b)(3)(A) to enhance Pluta's offense level. As a result, we must "journey into the twilight zone of the Sentencing Guidelines and explore the outer limits of the district court's authority to depart [upward],"*United States v. Colace,* 126 F.3d 1229, 1230 (9th Cir.1997), where Pluta claims that the aberrant behavior has already been adequately considered by the guidelines.

Fortunately, the guideposts staked out in the sentencing guidelines are particularly helpful in this case. Application of the one level enhancement in § 4B1.4(b)(3)(A) requires the commission of a single crime of violence. *See* U.S.S.G. § 4B1.4(b)(3)(A) ("in connection with *a* crime of violence") (emphasis added). In this case, Pluta committed at least two crimes of violence—shooting the handgun at Officer Ladnier and dry-firing the handgun at a number of motorists. Since the district court needed only one of these crimes of violence to enhance Pluta's offense level to 34, it could rely on the other crime(s) of violence Pluta committed that night for an upward departure. *See United States v. Pittman,* 55 F.3d 1136, 1139 (6th Cir.1995) (approving a two-level upward departure where applicable sentencing guideline did not take into account multiple victims). In fact, the sentencing guidelines specifically note that where an applicable guideline does not consider the possibility of multiple victims, a departure is warranted if the facts in the case demonstrate that multiple victims were involved. U.S.S.G. § 5K2.0. For example, the robbery guidelines include a specific adjustment based on the extent of any injury to a victim. "[B]ecause the robbery guideline does not deal with injury to more than one victim, departure would be warranted if several persons were injured." U.S.S.G. § 5K2.0. Similarly, because § 4B1.4(b)(3)(A) does not take into consideration scenarios involving the commission of multiple crimes of violence, the district court's use of Pluta's conduct on Interstate 40 was a permissible basis for an upward departure.

 Another ground noted by the district court for an upward departure was that "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." U.S.S.G. § 4A1.3. A departure pursuant to § 4A1.3 is appropriate even if the defendant is already in Criminal History Category VI. *United States v. Osborne,* 948 F.2d 210, 212 (6th Cir.1991) (twenty-four criminal history points was so high that even placement in Category VI did not adequately reflect the seriousness of the defendant's past criminal behavior). As the guideline states, "there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for Criminal History Category VI is not adequate to reflect the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3. When deciding whether an upward departure from Criminal History Category VI is warranted, the sentencing court "should consider that the *nature* of the prior offenses rather

than simply their number is often more indicative of the seriousness of the defendant's criminal record." U.S.S.G. § 4A1.3 (emphasis added). Any upward departure for a defendant in Criminal History Category VI, however, can only be achieved through an increase in the defendant's offense level. U.S.S.G. § 4A1.3.

A review of Pluta's criminal record amply demonstrates the serious nature of his prior conduct. Pluta's criminal history score of twenty-five included a laundry list of violent offenses ranging from battery to aggravated assault. One of these offenses involved Pluta robbing an individual at knife point. Pluta's proclivity toward physical violence has been accentuated by his love of firearms. Aside from his conviction in this case, Pluta has been previously convicted of possessing and using firearms. In addition, Pluta has twice been sentenced to a prison term significantly greater than a year. On a number of occasions, however, the state courts provided Pluta a lenient sentence in the hope of rehabilitating him. Their efforts, as exhibited by the facts in this case, ultimately proved to be unsuccessful.

Pluta has repeatedly violated the conditions of his parole, probation, and pre-trial release by engaging in serious criminal offenses ranging from burglary to selling stolen property. Even while in prison, Pluta was involved in incidents involving assault, loan sharking, and selling illegal drugs. Further, this is not the first time that Pluta has been convicted of being a convicted felon in possession of a firearm. He was sentenced in 1990 to five years in prison for possessing a firearm as a convicted felon and for attempting to flee from the police after being pulled over for driving a stolen vehicle. As the district court noted, "the Defendant obviously has not learned from his past convictions."

All of these aspects of Pluta's criminal history are specifically encouraged in the sentencing guidelines as a proper basis for an upward departure. U.S.S.G. §§ 4A1.3 (a), (b), (d). Pluta argues that the district court already considered his entire criminal record when it determined that he qualified for the armed career criminal sentencing enhancement. He contends in essence that the appli-

cable guideline's heartland encompasses *all* of a defendant's earlier prior felony convictions. This is simply not the case.

The armed career criminal sentencing enhancement says that it applies where the defendant has *"three* previous convictions ... for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e) (emphasis added); *see* U.S.S.G. § 4B1.4. By its terms, the guideline covers only a limited range of behavior (nonviolent behavior is not included) and even then only requires a finding that such behavior occurred on three prior occasions. "Nothing in this language (or its apparent purpose) says that *every* [past conviction] must fall within its heartland." *Doe,* 18 F.3d at 44. Indeed, "the fact that Congress has imposed a fifteen-year mandatory prison term upon felons in possession with *three* earlier *violent* felonies ... suggests, by extrapolation," *id.,* that the guidelines' heartland concerns only those three earlier violent felonies. The facts of this case bear this point out.

In making its determination to apply § 924(e), the district court only looked at four of the more than ten prior convictions Pluta had on his record. Moreover, the fact that Pluta has a high recidivism rate, repeatedly violates the conditions of his parole, engages in criminal activity while in prison, and has previously been sentenced to more than five years of incarceration, were never factored into the court's calculus concerning whether Pluta qualified for the armed career criminal enhancement under § 924(e). Because a district court is entitled to some leeway in deciding whether a particular aspect of a case is sufficiently outside the guidelines' "heartland" to warrant a departure, *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2046–47, 135 L.Ed.2d 392 (1996), we find that the district court's decision to depart upward was properly based on the serious nature of Pluta's criminal history.

### III. CONCLUSION

For all the reasons stated above, we **AFFIRM** the judgment of the district court.