**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Quincy Jamote PRICE, Juwell Darnell Castleberry, Defendants–Appellants.**

**Nos. 00–1569, 00–1709.**

United States Court of Appeals,
Sixth Circuit.

April 25, 2003.

BEFORE: NORRIS and BATCHELDER, Circuit Judges;  and

FORESTER,* District Judge.

FORESTER, District Judge.

Quincy Jamote Price and Juwell Darnell Castleberry were indicted in a fourth superseding indictment with engaging in a conspiracy to distribute cocaine, cocaine base ("crack"), and marijuana in Grand Rapids. Michigan, in violation of 21 U.S.C. § 846. Castleberry pleaded guilty to one count of violating 21 U.S.C. § 846 as set forth in the third superseding indictment and later sought to withdraw his plea. He now challenges the district court's denial of that motion, as well as the indictment and his sentence. Price was ultimately convicted of the same offense after a jury trial and challenges both his conviction and sentence on appeal. For the reasons stated below, we AFFIRM the district court's rulings as to both appellants.

## I.

On September 29, 1999, a grand jury returned a fourth superseding indictment charging the appellants with engaging in a conspiracy to distribute cocaine, cocaine base, and marijuana from January 1996 until December 19, 1998. According to the indictment. Castleberry would obtain the drugs from sources outside of Michigan, specifically Los Angeles, while Price. Price's brother Shawte Dabar Price, and Timothy Lashawn Threats would occasionally make trips to retrieve the drugs. In short, Castleberry was the organizer of the conspiracy and Price was an active participant.

The conspiracy began to unravel in June of 1997 when Federal Express employees in Los Angeles notified federal agents that they had received a suspicious package weighing 12 pounds and addressed to a Lamont Chivis at 1931 Bradford, N.E., Grand Rapids, Michigan. The videotape from the surveillance camera in the Federal Express office showed Threats and two others paying to mail the package. The package was x-rayed and opened and found to contain three gift-wrapped packages containing a total of 2.9031 kilograms of cocaine.

Agents subsequently made a controlled delivery to the Bradford Street address in Grand Rapids. A neighbor signed for the package and indicated that Threats had asked her to hold it until he could retrieve it. While the delivery was in progress, Threats arrived in his car, saw the police, and tried to flee. He was stopped and consented to a search of the apartment, which uncovered an express mail shipping receipt dated April 30, 1997, and addressed to Price at the same Grand Rapids apartment. The receipt indicated that the package had weighed the same as the one that had been intercepted by the agents. In addition, agents found photographs of Price and Castleberry with a local gang known as the "Wealthy Street Boys."

A confidential informant told agents that Castleberry was the source of the cocaine. Further search warrants issued, including one for Price's residence that revealed records linking Price to Castleberry. In addition, five pounds of marijuana and an assault rifle were found.

After they were indicted, Price and Castleberry fled the jurisdiction and continued to distribute drugs. Castleberry was almost apprehended in an apartment in Las Vegas. Nevada, in June of 1998, but he escaped before he could be arrested. Another man was in the same apartment and identified himself as Marvin Dismuke; after he was released, agents

---

* The Honorable Karl S. Forester, Chief Judge of the United States District Court for the Eastern District of Kentucky, sitting by designation.

learned that "Dismuke" was, in fact, Price. A box containing five pounds of marijuana was found in the apartment and had both Castleberry's and Price's fingerprints on it.

The appellants were ultimately located and arrested in December of 1998. Castleberry entered into a plea agreement with respect to Count I of the third superseding indictment, but thereafter sought to withdraw his plea, which request the district court denied. Price proceeded to trial and was convicted of the conspiracy count. Price was ultimately sentenced to 324 months of imprisonment and Castleberry was sentenced to 360 months.

## II.

Price first argues on appeal that the district court erred in denying his motion for a judgment of acquittal based upon insufficiency of the evidence presented at trial. This court reviews the denial of such a motion *de novo. United States v. Humphrey,* 279 F.3d 372, 378 (6th Cir. 2002). In so doing,

> we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The *Jackson* standard requires us to view both circumstantial and direct evidence in a light most favorable to the prosecution. *United States v. Hofstatter,* 8 F.3d 316, 324 (6th Cir.1993), *cert. denied,* 510 U.S. 1131, 114 S.Ct. 1101, 127 L.Ed.2d 413 (1994). "Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt." *Talley,* 194 F.3d at 765 (quoting

*United States v. Keeton,* 101 F.3d 48, 52 (6th Cir.1996)).

*Id.* Price argues that the evidence at trial revealed, at most, that he was an associate of high-level drug dealers, but was only engaged in sales on a much lower level.

In order to sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must prove (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Welch,* 97 F.3d 142, 148–49 (6th Cir.1996). "[T]he connection of the defendant to the conspiracy need only be slight if there is sufficient evidence to establish the connection beyond a reasonable doubt." *United States v. Ward,* 190 F.3d 483, 488 (6th Cir.1999) (citing *United States v. Hernandez,* 31 F.3d 354, 358 (6th Cir.1994)). However, "mere association with conspirators is not enough to establish participation in a conspiracy." *United States v. Pearce,* 912 F.2d 159, 162 (6th Cir.1990) (quoting *United States v. Stanley,* 765 F.2d 1224, 1243 (5th Cir.1985)).

■ In the present case, viewing the evidence presented in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of conspiracy beyond a reasonable doubt. Price had several items seized from the Bradford Street residence in Grand Rapids. Michigan, an address to which the drugs were to be delivered. He had also signed for the earlier package addressed to the same residence that likely contained a cocaine shipment. Five pounds of marijuana, an assault rifle, and drug packaging materials were all seized from his residence. Agents found travel records of airline trips paid for by Castleberry, in addition to a pattern of telephone calls between Price and several other co-conspirators. Finally, several others—including co-conspirators Threats and David

Cantrell—testified that Price participated in the conspiracy. Given this, the district court did not err in denying Price's motion for judgment of acquittal.

Next, Price argues that the manner in which testimony from his brother, Shawte Price, was introduced at trial was reversible error. Shawte had entered into a plea agreement on March 5, 1998, and testified before a grand jury on July 25, 1998. After the appellant Quincy Price was arrested in December of 1998, the government obtained immunity for Shawte to secure his cooperation. When the assistant United States attorney ("AUSA") met with Shawte in January of 2000, shortly before Price's trial, Shawte told the AUSA that the marshals would have to "drag him up" to the stand to testify against his brother. The AUSA immediately advised Shawte to speak with his attorney and warned Shawte of the consequences that his refusal to testify would have on his own plea agreement with the government. The government asserts that Shawte expressed a reluctance to testify, but never explicitly indicated that he would assert his Fifth amendment rights on the stand or refuse to testify.

At trial, the government called Shawte to the stand and he initially answered questions regarding his plea agreement. He also acknowledged his testimony before the grand jury and the fact that he knew Castleberry and Threats. When asked if he was involved with Threats in obtaining and selling cocaine, Shawte asserted his rights under the Fifth Amendment, stated that he was appealing his guilty plea based upon ineffective assistance of counsel, and further stated that he was not guilty. He also "took the Fifth" when asked if he and his brother distributed cocaine. After a brief recess and outside of the presence of the jury, the district court told Shawte that he would be granted use immunity and ordered him to testify. Shawte refused and was dismissed as a witness.

Price argues that the district court should have granted his motion for a mistrial based upon Shawte's assertion of his Fifth Amendment rights. Specifically, he argues that the government called Shawte Price to the stand knowing that he would invoke his rights under the Fifth amendment, in violation of *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), and that the government's reference to Shawte's earlier grand jury testimony was also in error, relying on the Tenth Circuit's decision in *United States v. Torrez–Ortega*, 184 F.3d 1128 (10th Cir. 1999).

■ We find that there was no error in this case in allowing Shawte to be called to the stand and questioned. While Shawte did indicate in a pre-trial meeting with the government's counsel that he would have to be "dragged to the stand" to testify, he later indicated in that same meeting that he would, in fact, testify against his brother and that he never intended not to voluntarily take the stand. As a result, there is no evidence that the government "knew" or should have known that Shawte would assert his Fifth amendment rights prior to calling him to testify. Further, Shawte's entire testimony was very brief and the government's questioning ceased almost immediately after it was clear Shawte would not testify further. Also, although the government sought to introduce Shawte's grand jury testimony, such testimony was never, in fact, admitted into evidence or otherwise revealed to the jury. Therefore, this case is distinguishable from *Torrez–Ortega*, which the defendant relies on, and we find no basis for reversal in the district court's refusal to declare a mistrial.

■ Finally, Price contends that at sentencing, the district court erred in attributing 1.5 kilograms of cocaine base to him

for sentencing purposes simply because he was present in the house when powder cocaine was being cooked into crack cocaine. "We review a district court's calculation of the amount of drugs under the Sentencing Guidelines for clear error." *United States v. Copeland*, 321 F.3d 582 (6th Cir.2003). We find that the district court's attribution was not in clear error and was supported by sufficient evidence, including relevant conduct. The evidence that Price was involved in the conspiracy was "abundant," according to the district court, and this Court agrees. There was also abundant evidence that the conspiracy involved cocaine base, which the jury also found. Further, Price was tied directly to a package of powder cocaine that was later "rocked up" into crack cocaine in his presence. The district court also relied on the grand jury testimony of several co-conspirators, including Price's own brother's testimony that Price knew how to "rock up" powder into crack. Based upon this evidence, it was reasonably foreseeable to Price that any powder cocaine he was involved with might be "rocked up" into cocaine base. Thus, the district court did not err in attributing this crack cocaine to the conspiracy and, thus, to Price for purposes of sentencing.

## III.

For his appeal, Castleberry first argues that the third superseding indictment was invalid under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because it failed to allege an element of the offense: the quantity of drugs involved. This argument was recently rejected in *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), wherein the United States Supreme Court held that the omission of drug quantity from the indictment was not a " 'jurisdictional' defect" requiring dismissal. *Id.* at 1784–85. Therefore, the indictment in

the present case did not fail simply because it did not allege a specific quantity of drugs.

Castleberry also objects to the fact that the plea agreement did not contain a specific drug type or amount, and that these issues were reserved for the district court's determination at the sentencing hearing. He argues that his sentence must be vacated under *Apprendi* because these facts were not submitted to a jury and proven beyond a reasonable doubt but, instead, were determined by the district court using the lesser "preponderance of the evidence" standard. The recent case of *United States v. Stines*, 313 F.3d 912 (6th Cir.2002), presented similar circumstances.

[The defendants] both argue that the district court's failure to submit the drug type and quantity determination to the jury violates their constitutional rights in light of *Apprendi*. The Supreme Court held that "[o]ther than the fact of a prior conviction, *any fact that increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (emphasis added). Because the district court limited the defendants' sentences to twenty years, and the statutory maximum penalty for an unspecified quantity of any form of cocaine is twenty years, *see* 21 U.S.C. § 841(b)(1)(C), the *Apprendi* ruling is not triggered and does not impact the sentenced for either [defendant]. *See, e.g., United States v. Stafford*, 258 F.3d 465, 478–79 (6th Cir.2001) ("[A] violation of the principles set forth in *Apprendi* rises to the level of 'plain error' only where the defendant's sentence exceeds the maximum possible sentence that could be imposed by statute *absent* the

offending 'sentencing factor' determined under the too-lenient 'preponderance' standard.... [E]ven if a determination of a particular drug quantity is improperly made under the 'preponderance' standard, there is no plain error in a sentence that lies within the applicable statutory sentencing range for the same offense involving an indeterminate amount of drugs.").

*Id.* at 915–16 (second emphasis supplied). The *Stines* court also rejected the notion that *Apprendi* applies to any fact that increases a statutory *minimum* (as opposed to *maximum*) sentence. *Id.* at 916; *see also United States v. Leachman,* 309 F.3d 377 (6th Cir.2002) (overruling *United States v. Strayhorn,* 250 F.3d 462 (6th Cir.2001). *United States v. Ramirez,* 242 F.3d 348 (6th Cir.2001), and *United States v. Flowal,* 234 F.3d 932 (6th Cir.2000)).

■ Based upon these cases, we must reject Castleberry's arguments. At the sentencing hearing in the present case, the district court determined that the conspiracy at issue involved at least 1.5 kilograms of cocaine base and that it was reasonably foreseeable to Castleberry that the powder cocaine he was moving would be "cracked up." As a result, that amount was attributed to Castleberry for sentencing purposes. Castleberry vehemently denied any personal involvement with "crack," but admitted that he was personally involved in the sale and distribution of powder cocaine.[1] Leaving the "offending" sentencing factor of drug quantity out of the equation, and accepting Castleberry's argument that he had no knowledge of any crack cocaine, the statutory maximum penalty for an unspecified quantity of *any* form of cocaine is thirty years for a defendant such as Castleberry, who has a prior felony drug conviction. 21 U.S.C. § 841(b)(1)(C). The district court sentenced Castleberry to thirty years, which was not beyond the statutory maximum. As stated by this Court in the similar case of *United States v. Copeland,* 321 F.3d 582 (6th Cir.2003), "where a defendant is made subject to a higher range of punishment under §§ 841(b)(1)(A) and (B) but is nonetheless sentenced within the confines of § 841(b)(1)(C), his rights under *Apprendi* are not violated."[2] Therefore, *Apprendi* is not triggered and Castleberry's sentence was not improper.[3]

Castleberry also argues that the district court erred in denying his request to withdraw his plea of guilty. Castleberry entered into a plea agreement with the government on October 12, 1999. The following day, he wrote a letter to the district court seeking to fire his court-appointed counsel and to withdraw his plea. He wrote a similar letter again on October 25, 1999. He then filed a *pro se* motion to withdraw his plea on December 7, 1999. A second such motion was filed on January 31, 2000.

This Court reviews a district court's denial of a motion to withdraw a guilty plea

---

**1.** We reject Castleberry's argument pursuant to *United States v. Dale,* 178 F.3d 429 (6th Cir.1999), that he should only be sentenced for involvement with marijuana. This argument makes no sense in light of his admissions to the trial court below that he was personally involved with the distribution of powder cocaine. Further, evidence of both his personal involvement with cocaine and the conspiracy's involvement with cocaine was abundant.

**2.** In *Copeland,* this Court also noted that "because the district court remained within the confines of § 841(b)(1)(C), [the defendant's] due process and jury trial rights under *Apprendi* were not offended." This result applies equally to Castleberry.

**3.** We likewise reject Castleberry's argument that his plea violated *Apprendi* because it did not contain a drug amount.

for abuse of discretion, *United States v. Durham,* 178 F.3d 796, 798 (6th Cir.1999), and has set forth the following approach:

> Federal Rule of Criminal Procedure 32(e) provides that a court may permit a defendant to withdraw a plea prior to sentencing if he shows any "fair and just reason" for the withdrawal. Fed. R.Crim.P. 32(e). In *Spencer,* 836 F.2d at 239–40, this Court promulgated five factors for a court to consider in determining whether to grant a motion to withdraw: (1) the length of time between the guilty plea and the filing of the motion to withdraw, (2) the defendant's reason for not presenting the grounds earlier, (3) whether the defendant has asserted or maintained his innocence, (4) the circumstances surrounding the plea, the nature and background of the defendant, and whether the defendant has admitted guilt, and (5) any potential prejudice to the government, although a showing of prejudice is not necessary. In *United States v. Pluta,* 144 F.3d 968, 973 (6th Cir.1998), this Court added the defendant's prior experience with the criminal justice system as a sixth factor.

*Id.* As recognized by the district court. "[t]he factors listed are a general, non-exclusive list and no one factor is controlling." *United States v. Bazzi,* 94 F.3d 1025, 1027 (6th Cir.1996).

Castleberry takes issue with the reasoning of the district court, which relied in part upon the fact that fifty-six days had elapsed between the time Castleberry entered his plea and the filing of his motion to withdraw. The district court noted that "the record demonstrates that defendant entered into his plea following a long period of indecision and waffling characteristic of weighing the costs and benefits of proceeding to trial, rather than of rashly entering a plea of guilty in a confused state

of mind." According to Castleberry, this view is contradicted by the letters that he sent to the district judge, as well as by his oral attempt to withdraw his plea during a November 8, 1999, hearing before a magistrate judge.

The crux of Castleberry's argument is that he has consistently denied involvement with crack cocaine and that he entered into the plea agreement hoping to avoid the draconian sentences associated with trafficking in that drug. As he puts it, "Upon the realization that the District Court could and likely would find that he was in fact involved with cocaine base the Appellant immediately moved to withdraw his plea." In addition to this argument, Castleberry contends that the district court failed to comply fully with Rule 11 of the Federal Rules of Criminal Procedure, which directs the district court to make certain that the plea is knowing and voluntary.

■ We do not find an abuse of discretion in the present case. Castleberry admitted to trafficking in powder cocaine and marijuana. The change of plea hearing makes clear that Castleberry knew at that time that he might be held responsible for trafficking in crack cocaine. Castleberry was familiar with the criminal justice system, and did not enter a plea until nearly six months after his initial appearance, giving him time to weigh his decision and consult with counsel. Castleberry was a savvy defendant who was fully informed about the nature of his bargain. As a result, we affirm the district court's denial of Castleberry's motions to withdraw his guilty plea.

Next, Castleberry argues that the district court erred in imposing a $6,000 fine. The district court found that he did not have the resources to pay a fine at the time of sentencing, but noted that he would have the opportunity to work while

incarcerated, and calculated the fine at $100 per year for the first three years and $20 per month thereafter. The sentencing guidelines provide that a defendant must establish that he is unable to pay "and is not likely to become able to pay" a fine. U.S.S.G. § 5E1.2(a). Further, "[t]he amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive." *Id.* § 5E1.2(d).

■ We find that the district court did not err in imposing a fine on Castleberry. The statute provided for a maximum fine of $8,000,000. The district court based the fine on Castleberry's future ability to pay and structured the payment schedule in order to permit him to meet his obligations over time.

Castleberry next argues that because his prior conviction, which was used to enhance his sentence, was not set forth in the indictment and submitted to a jury or established beyond a reasonable doubt, his sentence was improper. Although Castleberry relies in part on *Apprendi*, that case clearly states that *"[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (emphasis added). Thus, even if a prior conviction increases the penalty for a crime beyond the prescribed statutory maximum, it need not be submitted to a jury and proved beyond a reasonable doubt under *Apprendi* because the Supreme Court specifically excepted prior convictions from the general rule. As a result, there was no error in this case.

Castleberry also argues that the Court erred in determining that he was responsible for a course of conduct that involved the distribution of at least 1.5 kilograms of crack cocaine. As with Price, we find that there was abundant evidence connecting Castleberry to this amount and type of drug and, therefore, the district court's findings were not clearly erroneous.

Finally, we can quickly dispose of Castleberry's argument that 21 U.S.C. § 841 is unconstitutional in light of *Apprendi.* This Court has previously rejected that argument. *Stines,* 313 F.3d at 919; *United States v. Martinez,* 253 F.3d 251, 256 n. 6 (6th Cir.2001).

## IV.

Based on the above, we AFFIRM the appellants' judgments and sentences in all respects.