**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jason S. MISE, Defendant–Appellant.**

**No. 00–3131.**

United States Court of Appeals, Sixth Circuit.

Oct. 24, 2001.

---

* The Honorable Lesley Brooks Wells, United States District Judge for the Northern District of Ohio, sitting by designation.

Before KEITH, SUHRHEINRICH and CLAY, Circuit Judges.

PER CURIAM.

Defendant Jason S. Mise appeals from the judgment of the district court following his guilty plea to one count of aiding and abetting another to mail a destructive device, in violation of 18 U.S.C. §§ 1716 and 2; and one count of possession of an unregistered pipe bomb, in violation of 26 U.S.C. §§ 5841, 5861(d), (e), and 5871. We AFFIRM.

## I.

On November 17, 1998, a postal employee collected a package addressed to the Akron Police Department which contained two pipe bombs and a detonator designed to go off when the package was opened. (J.A. 128.) Postal inspectors determined that Mise made and packaged the bomb because he was upset for having been investigated for manufacturing methamphetamine. Mise initially contacted Steve Ingersoll to mail the package. Ingersoll in turn recruited Rodney Lee Park, who mailed the package, in return for some methamphetamine from Mise.

At the time of this incident, Mise was under home confinement with electronic monitoring as a condition of his pretrial supervision in federal Case No. 5:98CR00333. (J.A. 128.) He was living at 6188 First Avenue, Kent, Ohio, with his mother, Patricia Magner and her husband. Magner was caring for Mise's children by his fiancé Trina Schucker. (J.A. 32–34.)

Defendant Jason Mise was indicted by a federal grand jury on July 27, 1999, in connection with the mailing of a pipe bomb on November 16, 1998, to the Akron Police Department. Mise was charged with aiding, abetting or procuring the mailing of a destructive device (a pipe bomb) (Count 1), using a destructive device in relation to a crime of violence (Count 2), manufacturing a destructive device (Count 3), and possessing an unregistered destructive device (Count 4). Mise entered a plea of not guilty on August 5, 1999. Trial began on October 18, 1999. The jury was selected and sworn, and then excused for the remainder of the day, during which time the district court heard the Government's motion to introduce 404(b) evidence. At approximately 3:00 p.m., after the district court granted the Government's motion, Mise's attorney informed the government that Mise was considering a guilty plea. The proposed plea agreement provided that Mise would plead guilty to Counts 1 and 3 (mailing and manufacturing) and that the Government would dismiss Counts 2 and 4 (use of a firearm and possession).

The plea hearing began at 5:45 p.m. The court explained to Mise the constitutional rights he would be waiving by pleading guilty, and Mise, under oath, told the court, that he understood this. (J.A. 79–85.) The court then reviewed the elements of the offense of Counts 1 and 3. While the court was explaining Count 1 (mailing), Mise asked, "So you are not saying I actually manufactured it then?" The court replied, "Well, that's Count 3; we are talking now about Count 1," and proceeded to explain the elements of Count 1. (J.A. 87.) Mise stated that he understood all of the elements of the offense.

The court then explained Count 3 (manufacturing). After the court asked Mise if there was "anything about what you are charged with in Count 3 that you have any question about?" (J.A. 89–90), Mise asked to speak with his lawyer. (J.A. 90.) A discussion then took place off the record. The Government then informed the court that the plea agreement would be amended

to allow Mise to plead guilty to Count 4 (possession), rather than the manufacturing count. (J.A. 90.) Mise agreed that he understood all of the elements of Count 4. (J.A. 90–92.) The court next explained the sentencing consequences of pleading guilty. (J.A. 93–104.) Again, Mise indicated that he understood the court's explanation. (*Id.*) The court inquired: "Okay, Now, if you do plead guilty to Counts 1 and 4 when I ask you for those pleas, will those pleas of guilty be voluntary on your part?" Mise replied, "Yes, sir." When asked "Will it be an exercise of your own free will?" Mise answered, "Yes, sir." And when asked "Has anyone forced or threatened or required you to plead guilty?" Mise replied, "No." (J.A. 105.)

The court then asked the Government to provide a factual basis for the guilty plea. The Government stated in relevant part the following:

> If the case would proceed to trial tomorrow, the United States would present evidence that Mr. Mise solicited, first, Steven Ingersoll, and later Rodney Park, to mail a bomb to the Akron Police Department. Mr. Ingersoll declined, but Mr. Park agreed and came to Jason Mise's house when he was on electronic monitoring and received from Mr. Mise the package containing the bomb. Mr. Park then mailed the bomb.
>
> . . .
>
> Mr. Mise is also charged with possessing and transferring that, as he possessed and transferred that to Mr. Park, and it was not registered by him in the National Firearms Registration and Transfer Record.

(J.A. 107.) After a brief recess, Mise's attorney told the court that Mise did not dispute the Government's declaration. (J.A. 108.)

Mise told the court that he was "more than satisfied" with his counsel's representation. (J.A. 108.) The court then asked

Mise if he had any more questions, and told Mise that once he pleaded guilty "it will be too late to change your pleas." (Tr 32.) Mise indicated that he did not have any questions and that he did not need to consult with his attorney. (*Id.*) The court summarized the counts and accepted Mise's guilty pleas to Counts 1 and 4. Sentencing was scheduled for December 30, 1999, and later rescheduled for December 29, 1999. (J.A. 25.)

On November 10, 1999, Mise met with a probation officer. The probation officer reported that:

> On November 10, 1999, in the presence of his attorney, the defendant provided the following oral statements regarding his involvement in this case. The defendant reports that Steve Ingersoll approached him, inquiring if the defendant could make a bomb for him. The defendant claims that he said no. Subsequent to that, Ingersoll gave the defendant a package, telling the defendant that is [sic] was a bomb. He asked the defendant if he could give the package to Rodney Lee Park.
>
> The defendant claims that at the time, he had "no knowledge" as to what the intended purpose of the bomb was. He claims that the package was not addressed, nor did he know that the package was to be mailed. It is the defendant's belief that Rodney Lee Park addressed this package after he picked it up from the defendant.
>
> The defendant reports that he knows Steve Ingersoll as he and the defendant "use to sell marijuana together." He added that Park was the defendant's supplier of LSD, when "was selling LSD." The defendant related that he "should not be the center of attraction in this case." He states, "I regret that I did not tell authorities anything about this package. Had I known that this

was the intended purpose of this package, I would have stopped this immediately." The defendant adds, that, "Park is the main player in this."

The defendant's statements to this officer appear to be in stark contrast to what was revealed during the investigation into the defendant's actions in this case. In addition, statements made by Ingersoll, Park, and Pavelko, during the official investigation, also bear out a completely different set of details regarding the defendant's involvement in this case. Also, the defendant pled guilty on the day his trial was set to begin.

(J.A. 129, PSR.)

Several days prior to the sentencing, the court received four letters; one from Mise, one from his mother, one from his fiancé, and one from a cellmate named Bruce Herron. The district court observed that all had a common theme, namely "that the defendant is an innocent man." (J.A. 28.) Mise's letter, dated December 19, 1999, stated in relevant part:

> I didn't plead guilty because I'm guilty. I plead guilty because I love my familty. When you asked me if any promise were [sic] made to me, I was so upset that I forgot to tell you that there was a promise made to me. That promise was that they wouldn't indict Trina, the mother of my children. It's bad enough that these children have already had to watch their father be taken away from them. I wasn't about to let them become parentless for any amount of time.

(J.A. 30.)

At the beginning of the hearing on December 29, 1999, defense counsel requested a day to review the letters with Mise. The court gave Mise until January 7, 2000,

to file a motion to withdraw his guilty plea. The court reset the sentencing hearing for January 18, 2000 in the event such a motion was filed and the court decided not to grant it. (J.A. 41–42.)

On January 7, 2000, Mise filed a motion to withdraw his guilty plea, to which the Government responded. In that response the Government denied that it made any threat. (J.A. 45.) The court denied the order on January 18, 2000, and (J.A 58–64) and proceeded to sentence Mise. The court imposed a sentence of 168 months on Count 1; 133 months to run consecutively, and 35 months to run concurrently with the sentence from Case No. 5:98CR00333.[1] The Court imposed a sentence of 120 months on Count 4 to run concurrently the sentence imposed on Count 1, but consecutive with the sentence from Case No. 5:98CR333.

Mise filed a notice of appeal on January 20, 2000.

## II.

On appeal, Mise argues that the district court erred in denying his motion to withdraw his guilty plea, erred in denying a two level adjustment for acceptance of responsibility, and erred in imposing separate sentences on each of the two counts of conviction.

## A.

■ We review the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir.1996) (per curiam). Federal Rule of Criminal Procedure 32(e) provides that a court may permit a defendant to withdraw a plea prior to sentencing if he shows "any fair and just

---

1. Mise was sentenced to a term of 70 months by Judge Economus, in Case No. 5:98CR00333.

reason" for the withdrawal. Fed. R.Crim.P. 32(e). The rule is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir.1991) (per curiam) (citing *United States v. Carr,* 740 F.2d 339, 345 (5th Cir.1984)). It is not designed to allow a defendant " 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty.' " *Id.* (quoting *Carr,* 740 F.2d at 345).

■ In *United States v. Spencer,* 836 F.2d 236, 239–40 (6th Cir.1987), we addressed the five factors to be considered in determining whether to grant a motion to withdraw: (1) the length of time between the guilty plea and the filing of the motion to withdraw, (2) the defendant's reason for not presenting the grounds earlier, (3) whether the defendant has asserted or maintained his innocence, (4) the circumstances surrounding the plea, and (5) any potential prejudice to the government. In *United States v. Pluta,* 144 F.3d 968 (6th Cir.1998), we added a sixth factor, namely the defendant's prior experience with the criminal justice system. *Id.* at 973.

We consider each of these factors in turn.

### 1.

■ "The strongest factor supporting the district court's denial of Durham's motion is the length of time between Durham's plea and the filing of his motion to withdraw." *United States v. Durham,* 178 F.3d 796, 798–99 (6th Cir.1999), *cert. denied,* 528 U.S. 1033, 120 S.Ct. 559, 145 L.Ed.2d 434 (1999). Eighty-one days elapsed between the date of Mise's plea and his motion to withdraw. Mise pleaded guilty on October 18, 1999. On December 19, 1999, he wrote a letter to the Court, indicating that he was not guilty. As of December 29, 1999, the date set for sentencing, Mise had not yet filed a motion to withdraw his guilty plea. The Court asked Mise whether he wished to withdraw his guilty plea, based on his letter and the other letters received. Mise indicated through counsel that he was unsure, and wished to discuss the matter with his mother. (J.A. 111–12.) On January 7, 2000, Mise filed his motion to withdraw. Under this Court's precedent, an eighty-one day delay provides an appropriate basis to deny a motion to withdraw. *See, e.g., id.,* at 798–99 (seventy-seven day delay was the "strongest factor" supporting the district court's denial of the defendant's motion to withdraw); *Pluta,* 144 F.3d at 973 (denying motion to withdraw where the defendant waited more than four months; citing cases); *United States v. Baez,* 87 F.3d 805, 807 (6th Cir.1996) (sixty-seven day delay was strongest factor for denying the defendant's motion to withdraw); *United States v. Goldberg,* 862 F.2d 101, 104 (6th Cir.1988) (holding that a fifty-five day gap was a "lengthy delay"); *Spencer,* 836 F.2d at 239 (thirty-five day delay provided basis to deny motion to withdraw); *see also Carr,* 740 F.2d 239, 245–46 (upholding that the district court's refusal to allow the defendant to vacate his plea twenty-two days after plea; cited with approval in *Alexander* ).

### 2.

Mise did not offer the district court a justification for his delay. On appeal, he claims that there was a lack communication between he and his lawyer. However, as the Government points out, at the plea hearing, Mise told the court, under oath, that he was "more than satisfied" with his attorney. Thus, defense counsel cannot be faulted for counsel's unawareness until December 29, 1999, of the letters to the court.

### 3.

Mise has not consistently maintained his innocence. As the district court noted, "[t]he defendant's post plea claims of innocence mock his courtroom declarations of guilt under oath and at a time when the trial would proceed on the next day and during which he would have had the opportunity to challenge the credibility of the witnesses he raises in his letter of December 19, 1999." As detailed above, the guilty plea transcript reveals that the district court exhaustively inquired of Mise if he understood the factual basis for his plea, and whether he understood about the voluntariness of his guilty plea, and received repeated assurances from Mise that he understood both. Furthermore, Mise reported to the probation officer on November 10, 1999, that he knew the package contained a bomb. (J.A. 129.)

Finally, as the district court also observed, Mise's only explanation for his change of plea, an alleged promise not to indict the mother of his children, is not supported by any facts. Mise also argues that the district court should have had an evidentiary hearing to develop evidence of his coercion claim. Mise did not request one; nor was one necessary because Mise had already told the court, under oath, that no threats had been made or promises outside of the plea agreement.

### 4.

As the district court noted, Mise's guilty plea came after the jury had been impaneled, and the court had made two evidentiary rulings against Mise. Furthermore, in the plea agreement, the Government agreed to dismiss Count 2, which carried a statutory maximum of thirty years. Finally, Mise also admitted his guilt in open court, under oath, at this time, and after a full review of the factual bases of the counts against him.

### 5.

The Government alleges prejudice in that it would have to prepare its case again. *See Durham,* 178 F.3d at 799. The Government also points out that most of its cooperating defendants have already been sentenced and no longer have an incentive to cooperate with the Government. As the district court held, the prejudice to the Government of granting Mise's motion "is manifest." (J.A. 58.)

### 6.

Mise's prior experience with the criminal justice system also weighs against his request. Mise's presentence report reflects five contacts with the juvenile justice system, a domestic violence as an adult, in which he pleaded guilty, and the prior federal conviction for manufacturing an unregistered pipe bomb, following a jury trial. *See United States v. Mise,* 240 F.3d 527 (6th Cir.2001). This factors further supports the district court's ruling.

### B.

■ Mise also argues that the district court erred in refusing to grant Mise a two level reduction for acceptance of responsibility. We need not address this issue because as part of his plea agreement, Mise waived the right to appeal his sentence. *See Bazzi,* 94 F.3d at 1028; *United States v. Allison,* 59 F.3d 43, 46 (6th Cir. 1995).

■ In any event, there is no basis for a reduction. Mise's statements to the probation officer determined that Mise's statements to him were inconsistent with other codefendants' statements and with Mise's own guilty plea, and his December 19 letter to the court undermined his earlier plea.

### C.

■ Mise also argues that the district court erred in imposing sentences on each

count of conviction. Specifically, Mise objects because the district court imposed separate sentences on Counts 1 and 4. He claims that there is no provision in the Guidelines for a separate sentence on a lower level offense. Even if Mise is correct, *but see* U.S.S.G. § 5G1.2(c), there is no harm here because the district court sentenced Count 1, a 168–month sentence, and 4, a 120–month sentence, concurrently. These sentences were properly sentenced to run consecutive to the sentence imposed in Case No. 5:98CR00333. *See* 18 U.S.C. § 3584(a). There is no error.

### III.

The judgment of the district court is AFFIRMED.