**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0522n.06

**No. 08-6073**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 17, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | |
| **v.** | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| | ) | **DISTRICT OF KENTUCKY** |
| **ANTOINNE L. GOODLOE,** | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | **OPINION** |
| | ) | |

Before: BATCHELDER, Chief Judge; WHITE, Circuit Judge; and GREER, District Judge.[*]

**GREER, District Judge**. Antoinne L. Goodloe ("Goodloe") appeals the district court's denial of his motion to withdraw his guilty pleas. The government argues that Goodloe has not shown that the district court abused its discretion in denying his motion. For the following reasons, we AFFIRM the judgment of the district court.

**I.**

On February 8, 2006, Louisville police officers responded to a report of shots fired at an apartment in Louisville, Kentucky. The officers stopped James Bell as he was leaving the apartment. Bell told the officers he was at the apartment to purchase drugs from Goodloe, who lived in the apartment. Police entered the apartment for a protective sweep and smelled marijuana in the

---

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

apartment. They saw marijuana, cocaine residue and drug paraphernalia in plain view. Later investigation revealed that Goodloe had been waiting outside while Bell entered the apartment and was in possession of an SKS rifle which he had discharged. It was this gunshot that caused police to be summoned. Goodloe fled when police arrived.

The apartment was leased to Goodloe's girlfriend, Ashley Graves. She was contacted and gave the officers consent to search the apartment. The search revealed 64.9 grams of crack cocaine, 373.2 grams of powder cocaine, a loaded .25 caliber handgun and two Red Carpet Inn keys. Graves told police the drugs and handgun belonged to Goodloe. The keys were for rooms at the Red Carpet Inn rented to Goodloe and his brother, Zephaniah Goodloe ("Zephaniah").

On that same day, February 8, 2006, an employee of a Red Carpet Inn in Louisville reported suspected drug activity from a room rented to the Goodloes. Police began surveillance on the room and observed Zephaniah park his car near the room. Goodloe was in the passenger seat. Goodloe entered the room and returned to the car. The officers followed the Goodloes to Taco Bell where they met Roanay Gray. Three grams of crack cocaine were sold to Gray for $100.00, and Gray and the Goodloes were arrested. Crack cocaine was seized from Gray's vehicle and $100.00 was found in the floorboard of the car. Zephaniah had $1,093.00 in cash on his person, Goodloe had $2,416.00 in cash on his person, and both Goodloes had Red Carpet Inn keys.

Gray and the Goodloes waived their rights and each gave a statement to police. Goodloe said he did not have any more drugs because he had sold all he had to Gray. Zephaniah told police he and Goodloe had already checked out of the Red Carpet Inn and that police already had the "big guy" and "didn't need to go back there." He identified the "big guy" as Goodloe. Gray admitted that

he purchased crack from the Goodloes on multiple occasions. He said he would contact Zephaniah to arrange the purchases but that it was Goodloe who sold him the crack cocaine.

Police returned to the room at the Red Carpet Inn, which was occupied at the time by Tiffaney Jones and Chrishaunda Murray. Jones and Murray consented to a search of the room. Police found digital scales, 36.6 grams of crack cocaine and 15.4 grams of powder cocaine in the room. Murray told police that she and Zephaniah sold crack, and that Zephaniah had supplied her with crack and marijuana. Jones admitted that she sold drugs for Murray.

In a later interview with police, Zephaniah said he and Goodloe stayed at Gray's apartment and sold drugs there from December, 2005, until February 8, 2006. Goodloe also cooked crack at the apartment. Zephaniah told police he bought the .25 caliber handgun for Goodloe because Goodloe wanted the gun for protection during drug deals and could not buy it for himself (Goodloe was a convicted felon).

## II.

Goodloe was indicted by a federal grand jury, along with five others. Count One of the indictment charged Goodloe with conspiracy to possess with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846; Count Two charged Goodloe with possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841; and Count Four charged Goodloe with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). After Goodloe's motion to suppress was denied, the case was set for trial on June 11, 2007.

On June 8, 2007, after most of his co-defendants had entered guilty pleas and agreed to testify against him, Goodloe appeared before a magistrate judge to enter pleas of guilty as to Counts One and Four of the indictment. Although there was no written plea agreement, the government agreed

to dismiss Count Two, recommend a sentence at the low end of the applicable guidelines range, and to abstain from filing a notice pursuant to 21 U.S.C. § 851. If the § 851 notice had been filed, Goodloe would have faced a 20 year mandatory minimum sentence rather than a 10 year mandatory minimum. The magistrate judge recommended acceptance of the guilty pleas, the district court accepted the pleas on July 12, 2007, and an order was entered adjudging Goodloe guilty.

On July 31, 2007, Goodloe's attorney, the Federal Defender, filed an *ex parte* motion "for hearing to determine whether it should be discharged and substitute counsel appointed." The motion was premised on allegations by Goodloe that "representation by the Federal Defender herein has been constitutionally ineffective." The motion advised the court of Goodloe's dissatisfaction, attached copies of correspondence from Goodloe and Goodloe's affidavit. The motion further recited that Goodloe "presumably desires the appointment of substitute counsel," but that the "Federal Defender does not have any perceived conflict of interest and knows of no reason why representation cannot or should not continue." The letter from Goodloe is dated June 25, 2007,[1] and referenced Goodloe's "compliant [sic] of inaffective [sic] counseling." Goodloe's letter stated that his attorney was "pushing a plea on me," but did not explicitly request to withdraw his guilty pleas.

An *ex parte* hearing on the Federal Defender's motion was held before the magistrate judge on August 14, 2007. At the hearing, counsel explained that the conflict between Goodloe and counsel had developed over Goodloe's desire to withdraw his guilty pleas against the advice of counsel and several complaints by Goodloe about the quality of the Federal Defender's

---

[1] Although dated June 25, 2007, the letter was not available to the court until the filing of the Federal Defender's motion on July 31.

4

representation.[2] Goodloe was asked by the magistrate judge directly whether he wished to withdraw his guilty pleas and he answered "[y]es, sir . . . I never planned to plead guilty." New counsel was appointed on August 20, 2007.

On December 11, 2007, substitute counsel sought a continuance of Goodloe's sentencing hearing, which was scheduled for December 17, 2007, on the basis that he was reviewing discovery materials and transcripts "in anticipation of the preparation of the necessary objections to the PSI and/or other motions." On February 20, 2008, Goodloe filed a motion to set aside his guilty pleas. On April 20, 2008, Goodloe filed a supplemental memorandum in support of his motion with the affidavit of Goodloe attached. In his affidavit, Goodloe stated that he had been "convinced" by counsel to enter the guilty pleas, that he had maintained his innocence to counsel and that he did not understand that, by entry of the guilty pleas, he waived all pretrial motions. The government responded in opposition to the motion and, on June 10, 2008, the district court denied Goodloe's motion to withdraw his guilty pleas. On August 21, 2008, Goodloe was sentenced to 121 months of imprisonment. This appeal followed.

**III.**

We review the denial of a motion to withdraw a guilty plea under the abuse of discretion standard. *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006). A district court abuses its discretion when it relies on erroneous findings of fact, applies the wrong legal standard, misapplies

---

[2] When asked by the magistrate judge what complaints he had about the Federal Defender's representation, Goodloe responded that his phone records should have been obtained, apparently to show that he did not have telephone contact with other co-defendants. He also claimed that a "dude" could have provided impeachment evidence to show that his brother, Zephaniah, was lying. He did not identify this person and apparently had never previously disclosed this information to his attorney.

the correct legal standard in reaching a conclusion, or makes a clear error in judgment. *United States v. Thorpe*, 471 F.3d 652, 660 (6th Cir. 2006).

A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to do so. *Ellis*, 470 F.3d at 280. Under Rule 11, a defendant may withdraw a guilty plea after it is accepted by the court, but before the court imposes sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *Ellis*, 470 F.3d at 280 (internal quotation marks omitted). The rule permitting withdrawal of a guilty plea is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id.* at 280-81 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).

A multi-factor balancing test is applied to determine whether a defendant has met the burden of proving that the withdrawal of his guilty plea is for a fair and just reason. The factors include: (1) the amount of time that elapsed between the plea and the motion to withdraw; (2) the presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted. *United States v. Bashara*, 27 F.3d 1174, 1181

6

(6th Cir. 1994), *superceded on other grounds by statute as recognized in United States v. Caseslorente,* 220 F.3d 727, 734 (6th Cir. 2000).

No one factor controls; the list is general and non-exclusive. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). The relevance of each factor varies according to the "circumstances surrounding the original entrance of the plea as well as the motion to withdraw." *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987).

## IV.

Here, we conclude that the district court did not abuse its discretion and the relevant factors, taken as a whole,  support affirming the district court's denial of the motion to withdraw the guilty pleas.

The first factor appears, at first blush, to weigh in Goodloe's favor, but only marginally so. Goodloe pled guilty on June 8, 2007,[3] and sometime between then and July 31, the date on which the Federal Defender filed her motion, the defendant made his attorney aware of his desire to move to withdraw his guilty pleas, a decision with which his attorney disagreed.[4]  The first notice to the court of Goodloe's interest in withdrawing his guilty pleas was the filing of the July 31 motion.

---

[3]  At the change of plea hearing before the magistrate judge on June 8, 2007, Goodloe clearly and unequivocally admitted his guilt.  He acknowledges that the district court explained his constitutional rights, the nature of the crimes charged, the consequences of the guilty pleas, and that there was an adequate factual basis for the guilty pleas. *See* Def.'s Br. at 15.

[4]  Goodloe claims that only 17 days passed between the entry of his guilty pleas and the expression of his desire to move to withdraw his guilty pleas–*i.e.,* from June 8, 2007, to June 25, 2007, the date that appears on Goodloe's letter to the court which was attached to the Federal Defender's July 31, 2007 motion. Our review of the letter, however, does not reveal that Goodloe clearly expressed a desire to withdraw his guilty pleas , but rather that he was dissatisfied with counsel's performance.  Furthermore, the letter was not sent to the district court and the record does not indicate when counsel received the letter.  The June 25 letter, while clearly complaining about counsel's performance, could be interpreted as a complaint that counsel was not effectively preparing for Goodloe's upcoming sentencing hearing.  In his letter, Goodloe makes reference to his desire that the court "base punishment upon the real conduct of this case."

Goodloe did, at the August 14 hearing, clearly express his interest in moving to withdraw his guilty pleas to the magistrate judge. Then, however, another six months separates the appointment of substitute counsel and the actual filing of the motion to withdraw the guilty pleas.

Even if we consider only the delay between June 8, 2007, and the time when Goodloe expressed his desire to withdraw his guilty pleas to counsel, the period of delay is, at best, "at the boundary line between what is acceptable and what is not." *United States v. Jannuzzi*, No. 07-4521, 2009 WL 579331 at *3 (6th Cir. March 6, 2009). This Circuit has rejected appeals where the delay was as little as 30 days, *id*., and has cited with approval the Fifth Circuit's refusal to allow a defendant to withdraw his guilty plea when only 22 days had passed. *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (citing *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)).[5]

When we consider the six month delay between the appointment of substitute counsel and the actual filing of the motion to withdraw the pleas, however, the delay factor weighs heavily against Goodloe. Such delay has been identified in our precedents as the "strongest factor supporting the district court's denial" of a motion to withdraw a guilty plea. *Durham*, 178 F.3d at 798-99; *see also United States v. Pluta*, 144 F.3d 968 (6th Cir. 1998) (denying motion to withdraw where the defendant waited more than four months, and citing cases). Regardless, however, of the weight given to the timeliness factor, a defendant must demonstrate that the remaining relevant factors viewed as a whole weigh in his favor to be entitled to relief. Goodloe has not done so.

---

[5] We have also rejected other appeals where the period of delay between the entry of the guilty plea and the filing of the motion to withdraw the guilty plea has been fairly short. *See Spencer*, 836 F.2d at 239 (35 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67 days); *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004) (75 days)*; United States v. Durham*, 178 F.3d 796,799 (6th Cir. 1999), *cert. denied*, 528 U.S. 1033 (1999) (77 days); *United States v. Cinnamon*, 112 Fed. Appx. 415, 418-19 (6th Cir. 2004) (at least 90 days).

Regarding the second factor, Goodloe has not presented any valid justification for the delay in filing his motion to withdraw. Although the initial delay in the filing of his motion may be explained by the reticence of counsel with respect to the filing, Goodloe offers no convincing explanation for the six month delay between the appointment of substitute counsel and the filing of his motion to withdraw his guilty pleas. Goodloe argues that the delay was due to the events surrounding withdrawal and substitution of counsel and that he immediately advised substitute counsel of his desire to withdraw his guilty pleas. Yet, substitute counsel spent six months "obtain[ing] related transcripts, review[ing] sealed records, review[ing] trial and discovery materials," and "communicat[ing] with the AUSA . . . so as to intelligently advise Goodloe as to the appropriate course of action and potential consequences related thereto." This factor weighs against Goodloe.

The third factor also weighs very heavily against Goodloe. Although Goodloe now asserts that he has always claimed innocence, the record in the case reflects otherwise. As an initial matter, Goodloe admitted during his initial interview with police that he had sold crack cocaine to Gray. More importantly, however, when Goodloe appeared before the magistrate judge on June 8, 2007, for his change of plea hearing, Goodloe's constitutional rights were explained to him, he was informed by the magistrate judge that giving false or misleading statements in response to the court's questions could subject him to additional criminal charges and he was clearly advised that he could change his pleas to pleas of guilty only if that was his "independent and voluntary decision." In addition, the magistrate judge clearly outlined the nature of the charges against Goodloe and asked the Assistant United States Attorney to outline the proof against Goodloe. After the AUSA had done so, the following exchange occurred:

THE COURT: Alright. Mr. Goodloe, did you hear the summary of facts that the prosecutor made?

THE DEFENDANT: Yes, sir.

THE COURT: And did you understand what he said?

THE DEFENDANT: Yes, sir.

THE COURT: Are those facts true?

THE DEFENDANT: Yes, sir.

THE COURT: And do you acknowledge that you did the things that he described there?

THE DEFENDANT: Yes, sir.

Goodloe then entered pleas of guilty as to each of the counts in a clear and unequivocal manner.

As we have previously observed, "[t]he defendant's post plea claims of innocence mock his courtroom declarations of guilt under oath." *United States v. Mise*, 27 Fed. Appx. 408, 414 (6th Cir. 2001). "A defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements." *United States v. Owens*, 215 Fed. Appx. 498, 502 (6th Cir. 2007) (quoting *United States v. Cinnamon*, 112 Fed. Appx. 415, 419 (6th Cir. 2004)) (alteration in original).

The fourth factor, the circumstances underlying the entry of the guilty pleas, also weigh against Goodloe. Goodloe was indicted for offenses for which he would have faced, upon conviction, a statutory mandatory minimum sentence of 20 years to life imprisonment, because of his prior drug felony conviction. By entering his pleas of guilty, even though done without a formal plea agreement with the government, he was able to obtain an agreement from the government to dismiss one count of the indictment, to recommend the low end of the advisory guideline range

10

applicable to Goodloe's case and, most importantly, not to seek the enhanced mandatory minimum sentence which would otherwise apply because of Goodloe's prior conviction. The government fully complied with its promises. Given the rather overwhelming evidence against Goodloe, including the testimony of cooperating co-defendants, his guilty pleas with the negotiated concessions from the government were clearly in his best interest.

The fifth and sixth factors, Goodloe's nature and background and his prior experience with the criminal justice system, also weigh against him. Although Goodloe was only 22 years of age at the time he entered his guilty pleas, he was not unfamiliar with the workings of the criminal justice system. A review of the hearing transcripts clearly indicates that Goodloe had the capacity to evaluate the impact of his pleas and the risk he was taking. The record also establishes that, even at his young age, Goodloe had extensive experience with the criminal justice system. At the time of the entry of his pleas of guilty, he had two prior felony drug convictions for first degree possession of controlled substances and a misdemeanor conviction for possession of drug paraphernalia. In each case, Goodloe had entered a guilty plea. In addition, Goodloe had several pending state charges at the time. Goodloe suggests that, although he had some experience with the criminal justice system, he had no experience with the federal system. While that is true, we do not see the distinction. Goodloe had, in his short adult life, accumulated significant criminal history and his prior guilty pleas undercut the validity of the argument he makes that he did not understand the consequences of his guilty pleas in this case.

Finally, although the parties discuss it in their briefs and the district court made findings concerning the last factor, that of potential prejudice to the government if the motion to withdraw is granted, we need not consider it. Unless the defendant establishes that the other factors viewed

11

as a whole weigh in his favor, the court need not consider whether the defendant's motion to withdraw his guilty plea prejudices the government. *See Spencer*, 836 F.2d at 240. To the extent this factor is considered, however, it too weighs against Goodloe. Some of Goodloe's co-defendants received downward departures from their sentences in exchange for their agreement to testify against Goodloe. Those defendants have now been sentenced and, accordingly, if Goodloe were permitted to withdraw his guilty plea, the government would no longer have any leverage to compel the co-defendants' cooperation. *See Bazzi*, 94 F.3d at 1027.

## V.

After weighing the relevant factors, we find that Goodloe has failed to demonstrate that he has presented a "fair and just reason" for withdrawing his pleas of guilty. Fed. R. Crim. P. 11(d)(2)(B). Accordingly, and for the reasons set forth above, we AFFIRM the judgment of the district court denying Goodloe's motion to withdraw his guilty pleas.