NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0489n.06

No. 22-3023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **FILED** |
| | ) | Dec 01, 2022 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JOSEPH DENNIS, | ) | THE NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |
| | ) | OPINION |
| | ) | |

Before: MOORE, GIBBONS, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Joseph Dennis was indicted by a federal grand jury for his involvement in a conspiracy to steal mail containing 1,322 gift cards worth almost $50,000. Dennis pleaded guilty to one count of conspiracy to steal mail and possess stolen mail in exchange for the government's dismissal of the three additional charges. Nearly five months later, Dennis moved to withdraw his guilty plea. The district court denied the motion and sentenced him above the Guidelines range to forty months of imprisonment. Dennis appeals his conviction and sentence. For the reasons stated, we DISMISS in part and AFFIRM in part.

I.

Joseph Dennis's conspiracy with his girlfriend and co-defendant Jennifer Riccardi began in December 2016 and continued through December 2017. Riccardi used her position as a United States Postal Service employee to steal mail and bring it back to a home she shared with Dennis. Dennis opened the stolen mail, collected U.S. currency or gift cards, and used or resold the gift cards. Dennis discarded or burned the remainder of the stolen mail. A search of the defendants'

shared home uncovered more than 1,322 stolen gift cards with a face value of $47,052.53. The gift cards were discovered laid out on the floor of the house, organized by merchant or category, alongside $42,000 in U.S. currency and an automatic currency counter.

In December 2018, Dennis was charged with four crimes for his role in the conspiracy: conspiracy to commit theft of mail and possession of stolen mail, in violation of 18 U.S.C. §§ 1708 and 371; conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); possession of stolen mail, in violation of 18 U.S.C. § 1708; and access device fraud in violation of 18 U.S.C. §§ 1029(a)(3) and 2. During a pretrial conference, Dennis informed the court that he wished to go to trial and that he did not understand a plea offer proposed by the government. He stated that he was not happy with his attorney and requested new legal representation. The court granted his request for new representation and appointed him a second attorney, Mark DeVan.

In October 2019, the parties reached a plea agreement. Dennis agreed to plead guilty to Count I in exchange for the dismissal of Counts II, III, and V. At the change of plea hearing, the court engaged Dennis in an extended discussion of the plea agreement. After a lengthy Rule 11 plea colloquy, the court concluded that Dennis was "fully competent and capable of entering an informed plea" and that his plea was knowing and voluntary.

After Dennis received his presentence investigation report (PSR), the relationship between Dennis and his attorney "deteriorated to the point where communication [was] impossible." Dennis's counsel moved for substitution and withdrawal. The court discussed this broken communication with Dennis at a January 2020 status hearing. In this hearing, Dennis asserted for the first time that he had been coerced to enter the plea agreement. When the court noted that Dennis had previously stated under oath that no one had tried to coerce him to enter the agreement,

Dennis claimed that he did not know the definition of "coerce" before looking it up after the hearing. The court agreed to appoint new counsel.

After a third attorney was appointed to represent him, Dennis moved to withdraw his guilty plea in March 2020, 147 days after the plea was entered. He claimed that he had "consistently expressed his innocence and the desire to proceed to trial" and asserted that "he felt forced and pressured to accept the plea even though he expressed his desire to [his attorney] to go to trial." He explained that he had only pleaded guilty because his attorney "made it sound to him that he had no real choice but to do so" and failed to "go over the agreement paragraph by paragraph." Dennis also stated "that he did not fully understand the requirements of supervised release."

The court held an evidentiary hearing on the motion to withdraw his guilty plea. Both Dennis and his second attorney testified at the hearing. Dennis asserted that he was confused and intimidated when he changed his plea. He argued that his mark on the agreement was not his full signature, though he acknowledged initialing each page.

In response, Attorney DeVan testified that he had reviewed the government's evidence with Dennis and alerted him to the low likelihood of success in a jury trial. In light of the evidence and his exposure to multiple ten-year sentences, DeVan told Dennis that he believed it was in his best interest to cut his losses and accept the proffered plea bargain, under which the government agreed to drop three of the four counts against him, leaving him with only one count carrying a statutory maximum of five years. DeVan testified that Dennis remained non-committal and requested that DeVan negotiate a recommended sentence of no more than 21 months. DeVan made repeated efforts to negotiate a shorter sentence with the government, even in the final moments before the plea hearing. DeVan stated that he did not know the moment at which Dennis chose to accept the plea, whether in the courtroom or prior.

The court denied Dennis's motion to withdraw his guilty plea. The court evaluated each of the *Bashara* factors that determine whether a defendant has satisfied his burden of showing a fair and just reason to withdraw his sentence. *See United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994). Concluding that each factor weighed heavily against granting withdrawal, the court denied the motion.

As his case proceeded to sentencing, Dennis's relationship with his third appointed counsel also deteriorated. During several fruitless sentencing hearings, the court learned that Dennis was refusing to speak with his attorney. This culminated with the court substituting a fourth court-appointed attorney to represent Dennis.

Through his fourth attorney, Dennis filed a motion to dismiss on the ground that he had never entered a plea agreement because his full signature did not appear on the agreement. He argued that his mark on the signature line was not his full signature and that his initials on the agreement merely acknowledged his reading of the document, not agreement with its contents. The district court denied the motion at a hearing.

The government sought a 60-month sentence, well above the Guidelines range of 27 to 33 months. The court found that request excessive but nonetheless imposed an above-Guidelines sentence of 40 months of imprisonment to be followed by 3 years of supervised release.

Dennis now appeals.

II.

*Plea Withdrawal.* Dennis first argues that the district court erred by denying his motion to withdraw his guilty plea. The government responds by noting that Dennis waived his right to appeal the denial of his motion to withdraw his guilty plea.

"It is well settled that a defendant 'may waive any right, even a constitutional right, by means of a plea agreement.'" *United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012) (quoting *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004)). Thus, we consider "[o]nly challenges to the validity of the waiver itself" on appeal. *Id.* To start, we consider whether an appeal "falls within the scope of the appellate waiver." *Id.* at 378. Then, we consider whether the defendant entered into the agreement knowingly and voluntarily. *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001).

We review de novo whether Dennis waived his right to appeal the denial of his motion to withdraw his guilty plea. *United States v. Swanberg*, 370 F.3d 622, 626 (6th Cir. 2004). "[A]n appeal of the denial of a motion to withdraw a guilty plea is an attack on the conviction subject to an appeal waiver provision." *Toth*, 668 F.3d at 378–79. So if Dennis waived the right to appeal his conviction through a valid appeal waiver, he may not challenge the denial of the plea-withdrawal motion. *Id.*

In his plea agreement, Dennis acknowledged that counsel had informed him of his right to appeal his conviction or sentence or to challenge the conviction or sentence collaterally through a post-conviction proceeding. The agreement then explains, "Defendant expressly and voluntarily waives those rights, except as specifically reserved below." Dennis reserved only the right to appeal his *sentence* in four circumstances, as well as to file an "appeal or collateral attack with respect to claims of ineffective assistance of counsel or prosecutorial misconduct." As a result, the agreement expressly waives Dennis's right to challenge his conviction, including the denial of his plea-withdrawal motion.

The appellate waiver bars Dennis's claim so long as the agreement was knowing and voluntary. *Fleming*, 239 F.3d at 764. We evaluate a defendant's understanding and consent based on the express text of the waiver, the defendant's opportunity to discuss the plea agreement with his attorney, and the acknowledgments made by the defendant in his plea colloquy with the court. *Swanberg*, 370 F.3d at 625–26; *Toth*, 668 F.3d at 379.

Dennis's plea colloquy with the district court confirms that he knowingly and voluntarily entered into the agreement. The court ensured that Dennis was under oath, not under the influence of any drugs or medication, and understood the agreement. The court confirmed that Dennis had read the agreement in full and had discussed the agreement in full with his attorney before signing it. When asked by the court, Dennis confirmed that he was satisfied with his attorney. He also denied that any person had tried to force, coerce, or threaten him in any way to enter the plea. Dennis acknowledged that the plea agreement included a waiver of his right to withdraw his plea and confirmed his understanding of that waiver. He further acknowledged that his plea agreement included a waiver of his right to appeal his sentence or conviction, excepting specific reservations, and confirmed his understanding of that waiver. Dennis apologized to the court "for even being mixed up in any nefarious activity like this." The district court concluded that Dennis was "fully competent and capable of entering an informed plea" and that his plea was knowing and voluntary.

"A defendant's statements at a plea hearing should be regarded as conclusive [as to truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements." *United States v. Goodloe*, 393 F. App'x 250, 255 (6th Cir. 2010) (quoting *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007)) (alteration in the original). Here, Dennis offers no valid reasons to depart from his statements to the court. Dennis was in possession of the government's proposed agreement for approximately three months before he

signed it. He discussed the agreement with both his first and second attorneys during that timeframe. And as the district court noted in a subsequent order, because "Dennis had previously made an oral motion to remove counsel with whom he disagreed over strategy, it defies logic to suggest he suddenly changed course and [had] his will overcome by DeVan," his second counsel.

Dennis argues that his allegedly incomplete signature on the plea agreement is evidence of his confusion and coercion. He provides no case law to support this assertion. Twice, when asked if he had read and discussed the agreement "*before [he] signed it*," Dennis responded affirmatively without denying signature. Alongside his colloquy with the district court and his initialing of every page of the agreement (including the signature page), the irregular form of his signature is not alone persuasive. Given his clear statements, his ample opportunity to review and discuss the agreement, and the express text of the agreement, we conclude that Dennis knowingly and voluntarily waived his right to appeal his conviction and thus the denial of his motion to withdraw his guilty plea. We therefore dismiss his appeal insofar as he seeks to challenge his conviction.

*Substantive Reasonableness.* Dennis next argues that the district court's seven-month upward variance was substantively unreasonable. A defendant's claim that a sentence is substantively unreasonable amounts to a claim that the sentence is too long because "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We review a district court's sentencing decision for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007).

The record here reveals no abuse of discretion. The district court evaluated the § 3553(a) sentencing factors and explained why they justified an upward variance. The court noted: (1) Dennis's failure to accept responsibility; (2) the "integral part" Dennis played in the offense and the circumstances of his offense that indicated his knowing participation; (3) his

extended criminal history; (4) his high risk of recidivism; (5) his failure to comply with post-release control following a prior imprisonment; and (6) the alignment between the sentence and national average sentence lengths. The court also based its sentence on the statutory purposes of punishment and expressed hope that the additional time "would enable [Dennis] to understand the wrongfulness of his conduct."

Dennis argues that the district court punished him twice for claiming innocence by first declining to give him an acceptance of responsibility reduction when calculating the Guidelines range and then by considering his failure to accept responsibility as a reason to vary upward. But our court has recognized that a sentence is not substantively unreasonable simply because a district court considered conduct used to calculate the Guidelines range to impose a variance. *See United States v. Lanning*, 633 F.3d 469, 477–79 (6th Cir. 2018); *United States v. Tristan-Madrigal*, 601 F.3d 629, 636 n.1. (6th Cir. 2010). The same factors that influenced the district court's decision to withhold a sentence reduction for acceptance of responsibility may be considered when imposing an upward variance under § 3553(a). And Dennis's failure to accept responsibility was not the only reason given by the district court for varying upward—as detailed above, it was one of several.

Dennis also points to the fact that his sentence is longer is than his co-defendant's. But as the district court correctly recognized, § 3553(a) focuses on disparities at the national level, not between co-defendants. *See United States v. Gamble*, 709 F.3d 541, 555 (6th Cir. 2013). The court presented statistics that demonstrated that the average sentence for the same offense and criminal history category was 35 months nationally and 47 months in the Northern District of Ohio. The court also specifically distinguished Dennis from his co-defendant—noting his failure to accept responsibility and his much higher recidivism risk. Because "the punishment should fit

the offender and not merely the crime," different offenders may receive different punishments for the same crime. *Pepper v. United States*, 562 U.S. 476, 487–88 (2011) (quoting *Williams v. New York*, 337 U.S. 241, 247 (1948)). In this context, the district court exercised reasonable judgment and provided a clear explanation for the upward variance. Dennis's sentence was substantively reasonable.

*Ineffective Assistance of Counsel.* Finally, Dennis claims that he received ineffective assistance of counsel from his second court appointed attorney. Generally, "a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012) (quoting *United States v. Martinez*, 430 F.3d 317, 338 (6th Cir.2005)). This rule protects the court from making a decision based on a "trial record not developed precisely for the object of litigating or preserving the claim and thus often incomplete or inadequate for this purpose." *Id*. (quoting *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)). "[A]ppellate courts are not equipped to resolve factual issues" and we decline to do so here. *United States v. Franco*, 484 F.3d 347, 355 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

We find the record insufficiently developed to evaluate Dennis's claim. Dennis's second attorney, DeVan, did testify in an evidentiary hearing in which the district court considered Dennis's motion to withdraw his guilty plea. That testimony, however, was primarily directed towards Dennis's state of mind when he entered the plea agreement. The record provides an incomplete view of DeVan's assessment of the evidence in the case and the strategic strength of the choice to plea. The record also does not contain factual findings from which a court could determine whether Dennis was prejudiced by the alleged error. Dennis's claim therefore is "best brought . . . in a post-conviction proceeding under 28 U.S.C. § 2255" where "the parties can

develop an adequate record on this issue." *United States v. Brown*, 332 F.3d 363, 369 (6th Cir. 2003) (quoting *Aguwa*, 123 F.3d at 423).

* * *

We DISMISS in part and AFFIRM in part.